UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR-06-29-B-W |
| ) | |
| BYRON POLK, ) | |
| ) | |
| Defendant. ) | |

**SENTENCING ORDER**

The Court rejects the Defendant's contention that the statutory fifteen year mandatory minimum term of incarceration constitutes cruel and unusual punishment in violation of the Eighth Amendment and further rejects his invitation to ignore relevant conduct in the Presentence Report, the accuracy of which he has not contested.

**I.  STATEMENT OF FACTS**

On February 22, 2007, after a three day jury trial, Byron Polk was convicted of the attempted production of child pornography, a violation of 18 U.S.C. § 2251.  Believing he was dealing with a thirteen-year-old girl, Mr. Polk chatted on-line over a four month period with Detective Jacqueline Becker of the Cook's County Sheriff's Office in Illinois.  During this period, Mr. Polk repeatedly and graphically asked Detective Becker to take photographs of her private parts and send them to him; he also transmitted to her by videocam images of himself masturbating.

He now comes for sentencing.  Under 18 U.S.C. § 2251(e), Mr. Polk is subject to a mandatory minimum sentence of "not less than 15 years nor more than 30 years."  18 U.S.C. § 2251(e).  Mr. Polk challenges the 15 year mandatory minimum prison term as "cruel and unusual punishment" violative of the Eighth Amendment.  The Guideline sentencing range is

between 188 and 235 months.[1]  Mr. Polk inveighs against the range as unduly harsh for "a man sitting in his basement and asking an agent for sexually explicit photographs."  *Def.'s Mem*. at 3 (Docket # 162).  He further urges the Court not to engage in "judicial fact finding" as to his prior conduct with underage girls.  The Court rejects Mr. Polk's constitutional challenge and sentences him to a Guideline sentence.

### A.  The Trial

#### 1.  Kangaroojack and Kyla

In October 2004, Byron Polk, then 37 years old, was living alone in a basement apartment in the home of a friend in Staceyville, Maine.  In the midst of a divorce and disabled, he became obsessed with the internet.  On October 14, 2004, he visited the internet news group "Younger Girls 4 Older Guys."  There he made the virtual acquaintance of Kyla, actually Detective Becker, who identified herself as a thirteen-year-old girl.  Using the screen names kangaroojack and scorpionwithasting, Mr. Polk engaged in internet chat with Kyla from October 14, 2004 to February 22, 2005.

Sex was the main topic.  Even though Kyla informed Mr. Polk three times that she was thirteen, he persistently initiated sexual exchanges with her, which became increasingly coarse and anatomic.  During the first two chat sessions, Mr. Polk asked Kyla to send him photographs of herself and by the third session he asked her to send nude photographs ("wished I could see all of u; hoping I could see all of u u know what im saying").

---

[1] Mr. Polk's July 8, 1985 adjudication of delinquency for aggravated assault, even though sexual in nature, does not count as a conviction under 18 U.S.C. § 2251(e) for purposes of the 25 year mandatory minimum.  Unlike the Armed Career Criminal Act, the statute does not expressly include as predicate offenses certain juvenile adjudications.  *See United States v. Matthews*, Nos. 05-1655, 05-1925, 2007 U.S. App. LEXIS 18696 (1st Cir. Aug. 7, 2007); 18 U.S.C. § 924(e)(2).  The same is true of 18 U.S.C. § 3559(e), which mandates life imprisonment for persons convicted of committing certain federal sex offenses, including § 2251, in which a minor is the victim, and who have previously been convicted of a sex offense in which a minor was a victim.  If Mr. Polk had committed this same offense ten months later or if the state of Maine had elected to proceed against him as an adult, he would likely be facing a life sentence.

In early January 2005, during the fourth chat session, Mr. Polk asked Kyla if she was naked and asked direct questions about her "lower part." She again told him she was thirteen. Two days later, he asked Kyla again to take pictures of her private parts and send them to him, providing a vulgar description of how to take the pictures. While providing his true name and address, Mr. Polk expressed concern about getting in trouble and instructed Kyla to delete their correspondence.

On January 11, 2005, after Kyla told Mr. Polk that she had a camera but no film, Mr. Polk offered to send her money. He then transmitted images of himself over a videocam masturbating and ejaculating. From January 11, 2005, to January 18, 2005, Mr. Polk continued to chat with Kyla, pestering her for sexually explicit photographs. In the interim, Detective Becker referred the matter to postal inspectors, who visited Mr. Polk on February 23, 2005. Mr. Polk admitted he was kangaroojack and scorpionwithasting and acknowledged he had asked Kyla for pictures. Their investigation led to Mr. Polk's indictment, his trial, and the guilty verdict.

### 2. Rule 414 Evidence

During trial, the Government presented the testimony of two females, A.H. and A.S.; each were under the age of fourteen, when Mr. Polk sexually approached them. A.H., the thirteen-year-old daughter of Mr. Polk's landlord and friend, was living upstairs from his basement apartment. A.H. testified that Mr. Polk befriended her and she visited his apartment every day. In addition to non-sexual matters, Mr. Polk discussed sexual topics, including playing a sexual word game and asking her for sexual favors. At one point, while they were together in a hot tub, he rubbed her buttocks with his foot.

A.S. was A.H.'s friend; she met Mr. Polk in his basement apartment. She gave Mr. Polk her screen name and he began chatting with her on-line. After she told him her age, he replied that "age is just a number" and led the conversation toward sex. He asked her questions about her sexual experiences and whether she would do this with him. He expressed dreams about sexual encounters with young girls and virgins.

### 3. Rule 404(b) Evidence

The Government also presented the testimony of H.L., who was fourteen years old when Mr. Polk approached her.[2] She testified that she had met Mr. Polk on-line and that he had asked her for pictures of her private parts and offered to send her pictures of his. She reminded him she was only fourteen and he replied that he did not care. Ultimately, she blocked him on her Yahoo account.

### B. Sentencing Evidence

#### 1. Prior Conviction

Not admitted at trial was Mr. Polk's July 8, 1985 juvenile adjudication in Maine District Court for aggravated assault – sexual. When he was seventeen, Mr. Polk sexually assaulted a twenty-two-month-old girl and was sentenced to fourteen months in youth detention and two years probation.

#### 2. Connie Storey – Second Wife

During Mr. Polk's first marriage, he began to have sexual relations with Connie Storey, a person who used to baby-sit his children. Mr. Polk first had sexual relations with Ms. Storey ten days after her fifteenth birthday. She reported that he had invited her to go camping with what she thought were a number of people, but when she arrived, Mr. Polk was

---

[2] Because she was fourteen at the time, H.L.'s testimony was admitted under Rule 404(b), not Rule 414, and the Court gave a cautionary instruction on its limited use.

4

the only person there. They ended up sleeping together and having sex. She became romantically involved with the Defendant and eventually moved in with him after he and his first wife separated. When she was twenty-one, she and Mr. Polk married. She forced him to leave the house in 2004 when she discovered he was having sexually-oriented on-line conversations with a fourteen year old.

### 3. A Second Baby-sitter

In the summer of 1989 or 1990, Mr. Polk sexually approached another family babysitter, L.R., then twelve or thirteen years old. After asking her to go for a ride in his car, Mr. Polk drove to a secluded area and attempted to engage in sexual relations with her. She resisted and he relented.

## II. DISCUSSION

### A. The Eighth Amendment Challenge

#### 1. Cruel and Unusual Punishment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. AMEND. VIII. In 1983, the Supreme Court set forth the objective factors courts should consider when sentences are challenged on Eighth Amendment grounds: (1) the gravity of the offense and the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, (3) the sentences imposed for commission of the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 291 (1983).

#### 2. Deference Afforded Congress

Although the *Solem* Court set forth the criteria for reviewing sentences on Eighth Amendment grounds, it noted that "[r]eviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types

5

and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals." *Id.* at 290; *see also Harmelin v. Michigan*, 501 U.S. 957, 999 (1991). The Court explained that "there is a certain subordination of the judiciary to the legislature. The function of the legislature is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety." *Weems v. United States*, 217 U.S. 349, 379 (1910). Courts "do not sit as a 'superlegislature' to second-guess [a legislature's] policy choices. It is enough that the [legislature] has a reasonable basis for believing that [a sentence] advances the goals of [its] criminal justice system in any substantial way." *Ewing v. California*, 538 U.S. 11, 28 (2003) (citation and quotation omitted). Sentences that reflect "a rational legislative judgment [are] entitled to deference." *Id.* at 29. As such, the Court has frequently reaffirmed that "federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare." *Id.* at 22 (citation and quotation marks omitted); *see also United States v. Gilliard*, 847 F.2d 21, 26 (1st Cir. 1988) ("We begin our analysis with the admonition by the Supreme Court that successful challenges to the proportionality of sentences have been exceedingly rare.").

### 3. The Statute of Conviction

Mr. Polk was convicted of a violation of 18 U.S.C. § 2251(a) and (e):

> § 2251. Sexual exploitation of children
>
> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of

6

> producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.
>
> (e) Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned not less than 15 years nor more than 30 years. . . .

18 U.S.C. § 2251(a), (e).

### 4. Congressional Basis for the Penalties Imposed

Over the past thirty years, reacting to the increasing availability of child pornography over the internet, Congress has reiterated its determination to protect children by imposing ever harsher penalties against those who produce child pornography. As originally enacted in 1978, the statutory penalty for violation of this statutory provision was incarceration for a term not exceeding ten years and a fine not to exceed $10,000. Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7. In 1984, after finding that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society," Congress increased the fine against an individual for violating § 2251 to no more than $100,000.00. Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204. In 1996, Congress amended the statute's penalty provision to read: "Any individual who violates, or attempts or conspires to violate this section shall be fined under this title or imprisoned not less than 10 years nor more than 20 years." Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-30.

Finally, in 2003, Congress acted to further guard against the sexual exploitation of children, resulting in comprehensive revisions in the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the PROTECT Act). With regard to child obscenity and pornography prevention, Congress found:

> (2) The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain.
>
> (3) The Government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product.
>
> (12) Child pornography results from the abuse of real children by sex offenders; the production of child pornography is a byproduct of, and not the primary reason for, the sexual abuse of children.

PROTECT Act of 2003, Pub. L. No. 108-21, 117 Stat. 650. Consistent with these findings, Congress changed the penalty provision from imprisonment for "not less than 10" years to "not less than 15" years. PROTECT Act of 2003, Pub. L. No. 108-21, 117 Stat. 653.

### 5. Arguments and Analysis

#### a. The Gravity of the Offense and the Harshness of the Penalty

Mr. Polk argues that the fifteen year mandatory minimum sentence is grossly disproportionate to his crime. Mr. Polk paints a picture of a physically ill man confined to a basement apartment largely as a result his infirmities. Left alone in this setting, the internet became "an outlet where [Defendant] engaged in sexually titillating chat with other

8

consenting on-line users." *Def.'s Mem.* at 3.  Defendant argues: "This is the sum of the crime – a man sitting in his basement and asking an agent for sexually explicit photographs. The Government's search of [his] computers revealed that he had not one single image of child pornography." *Id.*  Defendant concludes that the offense conduct is "relatively petty when viewed against this fifteen year minimum penalty." *Id.*

The Court cannot agree.  It is unpersuaded by his attempts to minimize his culpability or reduce the severity of his conduct.  The Court cannot view Mr. Polk as a man sitting idly in a basement with innocuous intentions.  Rather, he is a man who attempted to coax a person he believed to be a thirteen-year-old girl into taking explicit sexual images of herself and sending them to him.  Defendant's behavior persisted over the course of four months and, during that time, he insisted that the internet conversations between himself and the purported thirteen-year-old remain private.  Mr. Polk also sent the individual he believed to be a young girl webcam images of himself masturbating.

As Mr. Polk's conduct reflects, despite Congress' best efforts, the use of the internet by those interested in child pornography has not abated.  In 2006, Congress found: "A substantial interstate market in child pornography exists, including not only a multimillion dollar industry, but also a nationwide network of individuals openly advertising their desire to exploit children and to traffic in child pornography.  Many of these individuals distribute child pornography with the expectation of receiving other child pornography in return." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587.

To be clear, here, there is no evidence that Mr. Polk engaged in this conduct as part of a larger scheme with others to document and distribute pornographic images of underage children.  As Mr. Polk points out, there were no images of child pornography on his

computer and no evidence of his buying, selling, or trading such images. But, the distinction between Mr. Polk and the professional child pornographer is one of degree, not kind. Using the distinctive lingo and spellings of teenagers on-line ("kewl, lol, ur"), Mr. Polk attempted to ingratiate himself to the young teenagers with whom he chatted, sought to inveigle them into a false sense of confidence and friendship, and then proceeded to cajole, plead, and beg them to produce pornographic images of themselves and transmit them to him over the internet. While it is true that Mr. Polk never managed to actually convince a young female to produce the requested pornography, it was not for want of his trying, but for their failure to do so. The mere fact that Mr. Polk was unsuccessful in actually producing child pornography does not make the attempt any less reprehensible.[3] It is also true that Mr. Polk was never physically present with his intended victim and he never actually took the requested photographs himself. But, the statute does not require physical presence; it only requires that the person "persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct. . . ." or attempts to do so. 18 U.S.C. § 2251(a), (e).

Despite these differences between Mr. Polk and those engaged in the business of producing child pornography, Mr. Polk remains precisely the individual Congress had in mind in enacting the PROTECT Act and his behavior embodies exactly the conduct Congress has unwaveringly sought to eradicate over nearly three decades of legislation.

---

[3] On August 22, 2007, the First Circuit rejected an argument that an attempt to possess illegal drugs should not count the same as actual possession of illegal drugs under the Controlled Substances Act (CSA). *United States v. Brown*, No. 06-2508, 2007 U.S. App. LEXIS 20061, at *26 (1st Cir. Aug. 22, 2007) ("[C]laiming that an attempt should be excluded from the definition of 'felony drug offense' overlooks Congress's clear mandate, for purposes of the CSA, to treat inchoate offenses with as much gravity as the substantive offenses that underlie them."); *see also* 18 U.S.C.§ 2251(e) ("Any individual, who violates, or *attempts to violate*, this section shall be fined . . . .") (emphasis added).

Congress has spoken in no uncertain terms. Indeed, Congress's plain explanation for the increased mandatory minimum sentences fits Mr. Polk:

> The increased mandatory minimum sentences are responsive to real problems of excessive leniency in sentencing under existing law. For example, the offenses under chapter 117 of title 18, United States Code, apply in sexual abuse cases involving interstate movement of persons or use of interstate instrumentalities, such as luring of child victims through the Internet. Courts all too frequently impose sentences more lenient than those prescribed by the sentencing guidelines in cases under chapter 117, particularly in situations where an undercover agent rather than a child was the object of the enticement. Yet the offender's conduct in such a case reflects a real attempt to engage in sexual abuse of a child, and the fact that the target of the effort turned out to be an undercover officer has no bearing on the culpability of the offender, or on the danger he presents to children if not adequately restrained and deterred by criminal punishment. Likewise, courts have been disposed to grant downward departures from the guidelines for child pornography possession offenses under chapter 110, based on the misconception that these crimes are not serious.

H.R. Conf. R. No. 10-866, Joint Explanatory Statement at 51 (commenting on Title 1 § 103(b)(1)(A)).

Mr. Polk's sentence is not grossly disproportionate to the crime but, rather, reflects Congress's reasoned determination to protect children. *See e.g. Atkins v. Virginia*, 536 U.S. 304, 312 (2002) ("[T]he clearest and most reliable objective evidence of contemporary values is the legislation enacted by the country's legislatures.") (citation and quotation marks omitted); *United States v. Kuck*, 573 F.2d 25, 27-28 (1978) ("Although the Eighth Amendment is a constitutional limitation on congressionally prescribed penalties, legislative provision for a penalty is some indication that it does not offend the evolving standards of decency that mark the progress of a maturing society."); *United States v. Wilder*, No. 04-10217-GAO, 2006 U.S. Dist. LEXIS 10155, at *5-8 (D. Mass. Mar. 10, 2006) (rejecting

11

Eighth Amendment challenge to mandatory minimum sentence for receipt and possession of child pornography).

### b. The Sentences Imposed on Other Criminals in the Same Jurisdiction

In his concurrence in *Harmelin*, Justice Kennedy wrote that "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed lead to an inference of gross disproportionality." *Harmelin*, 501 U.S. at 1005 (Kennedy, J., concurring). Justice Kennedy's limitation on the need for comparative analysis seems to have become a consensus. Thus, in *Ewing*, once the Supreme Court determined that the sentence was not grossly disproportionate, it did not engage in further comparative analysis. *Ewing*, 538 U.S. at 30. In *United States v. Frisby*, the First Circuit described the proportionality inquiry as a "threshold burden." 258 F.3d 46, 50 (1st Cir. 2001); *see also United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998). It appears, therefore, that once the Court determines, as it has, that Mr. Polk's sentence is not disproportionate, it need go no further.

Nevertheless, the Court admits some confusion as to whether a comparative analysis is still required. In the pre-*Ewing* case, *United States v. Cardoza*, the First Circuit acknowledged that *Harmelin* had "cast doubt on the exact method by which a reviewing court should approach [Eighth Amendment] challenges in non-capital cases." 129 F.3d 6, 18 (1st Cir. 1997). In *Frisby*, the First Circuit later noted that the defendant's citation of "statistics comparing his sentence to the sentences of others convicted of drug trafficking . . . are inapposite because they fail to compare his sentence to the sentence of other career offenders." *Frisby*, 258 F.3d at 50. This statement can be read as suggesting that a

12

comparative analysis would be appropriate if the sentences were for the same or similar crimes.

In excess of caution, therefore, the Court will briefly address Mr. Polk's contention that the mandatory minimum sentence here is grossly disproportionate to sentences for the same or similar crimes within this jurisdiction. Mr. Polk lists forty-eight defendants who have received federal sentences for violating 18 U.S.C. § 2252 and/or 18 U.S.C. § 2252A between January 1, 2002, and July 10, 2007. *Def.'s Mem*. at 5-6. He states that these "forty-eight defendants received sentences ranging from 6 months to 169 months. The average sentence meted out was 46.625 months, or less than four years. Byron Polk faces a mandatory minimum sentence of nearly four times that of these persons possessing actual images of child pornography." *Id.*

Unlike these forty-eight defendants, however, Mr. Polk was not convicted of possession or attempted possession of child pornography under 18 U.S.C. §§ 2252, 2252A; he was convicted of the much more serious offense of attempted production of child pornography. 18 U.S.C. § 2251. Congress has determined that the first time production of child pornography is more serious than its first time possession. *Compare* 18 U.S.C. § 2251(e); *with* 18 U.S.C. § 2252(b)(1) & 18 U.S.C. § 2252A(b)(1). Thus, the sentencing statistics in the Defendant's memorandum for the possession of child pornography are more like the comparison between sentences for career offenders and non-career offenders that *Frisby* concluded was "inapposite." *Frisby*, 258 F.3d at 50. As opposed to the production of child pornography, simple possession, though heinous, does not necessitate direct contact with the victim, does not directly result in the creation of new victims, and does not generate new pornography.

The Defendant's statistics merely reflect the congressional judgment that producers must be punished more severely than possessors. This Court cannot conclude that Congress's "use of severe penalties as part of the legislative armamentarium," *Frisby*, 258 F.3d at 51 (citation omitted), to harshly punish and deter the production of child pornography is cruel and unusual.

### c. The Sentences Imposed for the Commission of the Same Crime in Other Jurisdictions

Again, it is questionable whether the Court should reach this issue, since it has already concluded there is no gross disproportionality between Mr. Polk's criminal conduct and his sentence. Nevertheless, the Court will briefly address Mr. Polk's argument here as well.

Mr. Polk contends that under Maine and Massachusetts law, he would be facing maximum penalties of only five years for attempted production of child pornography. *Def.'s Mem*. at 8. Be this as it may, Congress has recognized that the production of child pornography is a national scourge that requires severe federal penalties. There are numerous areas of criminal law where federal penalties may differ significantly from state penalties for similar crimes, including certain drug trafficking offenses and many firearms offenses, but these differences do not render the national penalties unconstitutional. Instead, differing penalties reflect Congress's evaluation of the nature of these crimes and their impact on the country as a whole. To infer unconstitutionality solely from a wide gap between federal and state statutory penalties would be unwarranted.

Finally, federal sentences actually imposed for violations of 18 U.S.C. § 2251 have been especially severe. *See United States v. Johnson*, No. 06-3968, 2007 U.S. App. LEXIS 18060, at *2 (7th Cir. July 30, 2007) (affirming sentence of two concurrent life sentences for

being repeat sex offender against minors); *United States v. Burt*, No. 06-3415, 2007 U.S. App. LEXIS 17800, at *7 (7th Cir. July 26, 2007) (affirming sentence of 100 years imprisonment); *United States v. Boston*, No. 06-4137, 2007 U.S. App. LEXIS 16835, at *6 (8th Cir. July 16, 2007) (affirming 30 years imprisonment); *United States v. Johnson*, 451 F.3d 1239, 1240 (11th Cir. 2006) (affirming sentence of 140 years imprisonment); *United States v. Halling*, No. 06-30382, 2007 U.S. App. LEXIS 12042, at *3 (9th Cir. May 16, 2007) (affirming sentence of 260 months imprisonment); *United States v. Mentzos*, 462 F.3d 830, 833 (8th Cir. 2006) (affirming sentence of 480 months imprisonment); *United States v. Turner*, 206 Fed. Appx. 572, 573 (7th Cir. 2006) (affirming sentence of 100 years imprisonment); *United States v. Cunningham*, 191 Fed. Appx. 670, 675 (10th Cir. 2006) (affirming sentence of 15 years imprisonment); *United States v. Cieslowski*, 410 F.3d 353, 356 (7th Cir. 2005) (affirming sentence of 210 months imprisonment per plea agreement); *United States v. Jarrett*, 119 Fed. Appx. 429, 429-30 (4th Cir. 2004) (affirming sentence of 235 months imprisonment).[4]

### B. Relevant Conduct

In addition to his Eighth Amendment challenge, Defendant argues that the Court should not engage in judicial fact finding for those allegations contained in the Presentence Report (PSR). *Def.'s Mem.* at 9. Facing a sentencing guideline range of 188-235 months – at least eight months beyond the statutory minimum sentence – Mr. Polk criticizes the more likely than not standard of proof for the serious allegations of sexual misconduct involving other young women in their early teens and urges the Court to "carefully consider the

---

[4] Each case stands on its own facts, which differ in varying degrees from Mr. Polk's case. Most involved the actual production, not attempted production of child pornography.

wisdom of engaging in judicial fact finding."[5] *Id.* at 10. Relying on *Apprendi v. New Jersey* and *Blakely v. Washington*, Defendant claims that this case highlights the injustices that stem from judicial factfinding. 530 U.S. 466 (2000); 542 U.S. 296 (2004).

Defendant is incorrect. In *Apprendi*, the Supreme Court addressed judicial factfinding with respect to facts that would expose a defendant to a sentence in excess of the statutory maximum. 530 U.S. at 469. Similarly, in *Blakely*, the Court examined judicial factfinding that exposed a defendant to a sentence in excess of the standard statutory range of sentences, based on a judicial determination of "substantial and compelling reasons justifying an exceptional sentence." 542 U.S. at 299. Neither case is applicable. The guideline range in the PSR fits well below the statutory maximum of thirty years. In finding facts, the Court is performing its judicial obligation to determine the proper guideline range for Mr. Polk, whether he should be sentenced within that range, and, if so, what that sentence should be.

Mr. Polk is correct that the Guidelines are advisory. *United States v. Booker*, 543 U.S. 220 (2005). But, to the extent he implies that the Supreme Court rejected federal judicial factfinding for purposes of guideline determinations in *Cunningham v. California*, 127 S. Ct. 856 (2007), he misses the mark. Post *Booker*, the First Circuit said: "*Booker* did not hold that the Sixth Amendment prohibits judicial factfinding; it held only that the Sixth Amendment is violated by a mandatory guideline sentence scheme predicated on such factual determinations. Thus, we have consistently rejected the argument that judicial factfinding, by itself, violates *Booker*." *United States v. Ziskind*, 491 F.3d 10, 18 (1st Cir. 2007).

---

[5] The Court is perplexed about what facts the Defendant contends it would be finding by a more probable than not standard. Mr. Polk has apparently elected not to contest the relevant facts in the PSR; on these matters, the Court is not engaging in judicial fact finding. Rather, it is accepting the contents of the PSR as accurate, since the Defendant has not objected to them.

16

Nothing in *Cunningham* alters this conclusion. *See United States v. Belskis*, 477 F. Supp. 2d 237, 240-42 (D. Me. 2007).

Moreover, Mr. Polk concedes that he will not contest the allegations in the PSR. *Def.'s Mem*. at 10-11. Mr. Polk cannot have it both ways. He cannot fail to object to the contents of the PSR and simultaneously urge the Court to assume the contents are false. To place Mr. Polk within his properly calculated Guideline range, the Court may consider uncontested facts within the PSR. *See United States v. Cadieux*, No. 05-2567, 2007 U.S. App. LEXIS 19821 (1st Cir. Aug. 21, 2007); *United States v. Uribe-Londono*, 409 F.3d 1, 5 (2005) ("Where a defendant fails to rebut factual assertions in a PSR, the district court is justified in relying on those assertions."); *United States v. Morillo*, 8 F.3d 864, 872-73 (1st Cir. 1993) ("A defendant who accepts . . . without contesting the facts set forth in the [Presentence] Report can scarcely be heard to complain when the sentencing court uses those facts in making its findings."); *United States v. Rivera Ramos*, 856 F.2d 420, 424 (1988) ("The district court could properly rely when sentencing the defendant upon the information contained in the presentence report . . . . Both defendant and his counsel stated at the sentencing that they had had an opportunity to read the report, and defense counsel said that he had no objection to it.").

Here, if the contents of the PSR are true, Mr. Polk has engaged in a long-term and highly distressing pattern of predatory behavior against young girls, beginning in 1985 with a toddler, persisting through the late 1980s and early 1990s with girls in their early to mid-teens, and culminating in the repeated internet conversations with multiple young girls in 2004. As opposed to being a lonely, essentially harmless man convicted of an isolated and aberrational crime – as he now seeks to portray himself – Mr. Polk instead may be a serial

and calculating predator of young females. This distinction will be critical to the exercise of the Court's sentencing obligations.

## III. CONCLUSION

The Court rejects Byron Polk's contentions that the fifteen year mandatory minimum term of incarceration would constitute cruel and unusual punishment violative of the Eighth Amendment. It also rejects Mr. Polk's request to ignore relevant conduct in the Presentence Investigation Report to which he has not objected.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of August, 2007